UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CHERYL R. SHOOK | ] | |
| | ] | |
| Plaintiff, | ] | |
| | ] | |
| vs. | ] | 6:10-CV-2789-LSC |
| | ] | |
| MICHAEL J. ASTRUE, | ] | |
| Commissioner, | ] | |
| Social Security Administration, | ] | |
| | ] | |
| Defendant. | ] | |

MEMORANDUM OF OPINION

I. Introduction.

The plaintiff, Cheryl R. Shook, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI"). Ms. Shook timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Shook was forty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision and has a high school education. (Tr. at 19.) She does not have any past relevant work experience. (Tr. at 19.) Ms. Shook claims she became

disabled on October 20, 1989 due to depression, cervical disc disease, osteoarthritis, and chronic back pain. (Tr. at 14.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §416.920(b); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all the physical and mental impairments combined. 20 C.F.R. § 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. § 404.1520(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant's impairments fall within this category, he or she will be found disabled without further consideration. *Id*. If they do not, a determination on

the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. § 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Shook does not have a disability as of November 27, 2006, the date the application was filed. (Tr. at 20.) He further determined that Ms. Shook has not engaged in substantial gainful activity since November 27, 2006. (Tr. at 14.) The ALJ determined that the Claimaint's impairments of depression, cervical disc disease, osteoarthritis, and chronic back pain are "severe." (*Id.*) However, the Claimant's impairments did not meet one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. The ALJ did not find Ms. Shook's claims to be entirely credible, and he determined that

she has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), subject to the following limitations:

> The claimant is further restricted from climbing ladders, ropes, and scaffolding. The claimant is restricted from working at dangerous open heights, in temperature extremes, or in excessive humidity. The claimant is restricted to unskilled work with 1-2 step work instructions. The claimant is restricted from interaction with the general public. The claimant is restricted to occasional contact with co-workers and supervisors.

(Tr. at 16.)

According to the ALJ, Ms. Shook was a "younger individual" at the time she filed her claim, she has "at least a high school education, and is able to communicate in English," as those terms are defined by the regulations. (Tr. at 17.) He determined that "transferability of job skills is not an issue because the claimant does not have past relevant work." (Tr. at 19.) The ALJ concluded his findings by stating that "there are jobs that exist in significant numbers in the national economy that the claimant can perform," and she "has not been under a disability, as defined in the Social Security Act, since November 27, 2006, the date the application was filed." (Tr. at 19-20.)

II. Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is

substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standard was applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The Court may not decide the facts, weigh evidence, or substitute its judgment for that of the Commissioner. (*Id.*) "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen,* 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to

apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III. Discussion.

The Plaintiff makes three arguments in support of her claim that the ALJ's decision should be reversed. First, she believes the ALJ failed to properly evaluate the credibility of her testimony of pain and mental ability. (Doc. 7 at 12.) Second, she argues the ALJ erred by rejecting her treating physician's testimony. (Doc. 7 at 11.) Finally, the Plaintiff alleges that the ALJ failed to pose a full and complete hypothetical to the Vocational Expert ("VE"). (Doc. 7 at 14.)

A. Mental Ability and Subjective Pain Testimony

The Plaintiff alleges that the ALJ did not properly evaluate the credibility of her complaints of pain. (Doc. 7 at 12.)  In order for a Plaintiff to establish disability on the basis of pain, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991)). In *Dyer,* the Eleventh Circuit held that

the ALJ properly applied the *Holt* standard when he considered the claimant's daily activities, frequency of symptoms, and the types and dosages of medication, to conclude that the claimant's subjective complaints were inconsistent with the medical record. *Id*. at 1212.

The ALJ is allowed to discredit the Plaintiff's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rule. 96-7p, 1996 WL 374186 (1996)("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements.") "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable [this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Dyer*, 395 F.3d at 1210.

In this case, the ALJ indicated that the Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the

above residual functional capacity assessment." (Tr. at 17.) In making his determination, the ALJ considered the Plaintiff's objective medical history of back pain and depression as well as the Plaintiff's credibility.

The ALJ first noted that depression does not meet or equal a listed mental impairment. (Tr. at 15.) The ALJ determined that even though the Plaintiff was diagnosed with major depressive disorder in April 2006 and reported having hallucinations to Dr. Thomas, the Plaintiff's claims of the severity of the disorder were not supported by the record. (Tr. at 15.) The Plaintiff's Global Assessment of Functioning (GAF) was a score of 55, which the ALJ noted is indicative of moderate symptoms or moderate difficulty in social, occupational or school functioning. (Tr. at 15.) At no other time in the Plaintiff's medical records at the mental health center did the Plaintiff report suffering from hallucinations. According to the ALJ, there is no evidence that the Plaintiff's mental impairment "has ever resulted in any episodes of deterioration or decompensation, of extended duration." (Tr. at 16.) Thus, the ALJ did not find the Plaintiff's claims of mental impairment to be credible.

Next, the ALJ found that Plaintiff's testimony regarding her back pain was not supported by the objective medical history in the record. (Tr. at 17.) Credibility issues are within the province of the ALJ. *Wilson v. Heckler*, 734 F.2d 513, 516-517 (11th Cir.

1984). The ALJ indicated that the evidence reveals the Plaintiff's pain was controlled by medication in the form of epidural injections, and that the Plaintiff reported no side effects. (Tr. at 17.) Additionally, there is nothing in the record indicating that the Plaintiff found it necessary to receive additional epidural injections since 2007. (Tr at 17.)

The ALJ also afforded little weight to the Plaintiff's testimony. The Plaintiff reported that back pain and depression were her biggest problems. (Tr. at 28.) On July 11, 2008, Plaintiff failed to pull over for the police. (Tr. at 254.) Upon subsequently arriving at the emergency room, she claimed to have suffered from a stroke or seizure while being chased. (Tr. at 254.) During that emergency room visit, she gave different histories regarding the medications she was taking to the nurses and paramedics. (*Id.*) When tested for muscle tone, the Plaintiff would hold firm and then break immediately, which made the doctor believe that she was exaggerating her symptoms if there were any present. (Tr. at 254.) The Plaintiff left the hospital against medical advice and prior to all of her test reports coming back. (*Id.*) The ALJ found the Plaintiff's claims of subjective pain and mental disability were inconsistent with the record and therefore did not find the Plaintiff's testimony to be credible.

B. Clarification of Treating Physician's Findings

Plaintiff next argues that the ALJ should have asked Dr. S. Aggerwal, her treating physician, to clarify his findings concerning her disability. (Doc. 7 at 11.) In October 2006, Dr. Aggerwal completed a Clinical Assessment of Pain, which was given little weight by the ALJ. (Tr. at 17.) Plaintiff alleges that if the evidence received from the treating physician is inadequate, the ALJ must contact the treating physician to obtain clarification rather than rejecting the treating physician's assessment. (Doc. 7 at 11.) In his report, Dr. Aggarwal determined that the Plaintiff's pain was present to such an extent that Plaintiff would be distracted by the pain, abandon the task at hand at work due to the pain, and miss work at least four times a month due to pain. (*Id.*) Dr. Aggarwal also determined that Plaintiff's fatigue or weakness would negatively impact the Plaintiff's daily activities or work. (*Id.*) Plaintiff contends that the ALJ should have asked the treating physician for clarification if he was not satisfied by the responses in Dr. Aggarwal's forms. (Doc. 7 at 12.)

The ALJ is not required to re-contact a treating physician unless the report from the treating medical source is inadequate or incomplete. 20 C.F.R. § 416.912(e)(1). If the ALJ finds that treating physician's opinion is conclusory and not supported by clinical or laboratory findings, the ALJ may reject the physician's opinion. *Wilson*, 734 F.2d at 518.

In this case, the ALJ found that Dr. Aggarwal's opinions were inconsistent with his records. (Tr. at 17.) In his Clinical Assessment, Dr. Aggarwal indicated that the Plaintiff's pain would be controlled with medication, but that the side effects would be severe. (Tr. at 145.) However, this is inconsistent with Dr. Aggarwal's records of Plaintiff's treatment, which indicate that the Plaintiff at no time reported having side effects from her medication, and that Plaintiff was still receiving benefits from the medication. (Tr. at 198-202.) After evaluating the record, the ALJ decided that Dr. Aggarwal's opinions were not credible and afforded them little weight.  (Tr. at 17.)

C. Hypothetical Question to the Vocational Expert

Finally, the Plaintiff alleges that the hypothetical posed to the Vocational Expert ("VE") was incomplete. Specifically, Plaintiff argues that the hypothetical improperly assumed that the Plaintiff would meet the lifting requirements of light work and did not include Plaintiff's mental limitations. (Doc. 7 at 14.)

In satisfying the fifth step of the sequential process, "[t]he ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjection." *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)(referencing *Allen v. Sullivan*, 880 F.2d 1200, 1201)(11th Cir. 1989)). In so doing, "the ALJ may use Medical-Vocational Guidelines

as a framework to evaluate vocational factors, but must also introduce independent evidence, preferably through vocational expert's testimony of [the] existence of jobs in the national economy that the claimant can perform." *Id.* (citing *Wolfe v. Chater,* 86 F.3d 1072, 1077-78 (11th Cir. 1996)). To satisfy the substantial evidence standard, "the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). An ALJ need only include a claimant's credible limitations. *See Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1161 (11th Cir. 2004). If the Commissioner demonstrates that there is work available in significant numbers in the national economy that the claimant can perform, "the claimant must prove she is unable to perform these jobs in order to be found disabled." *Id.* at 1228.

The ALJ's first hypothetical considered a range of medium work that included occasional lifting and carrying up to 50 pounds and frequent lifting of up to 25 pounds but excluded climbing of ropes, ladders, scaffolding and limited exposure to concentrations of extremes of cold, heat, and humidity. (Tr. at 37.) The ALJ said there should be no interaction with the public, minimal interaction with supervisors and coworkers, and the work should be simple and only require one and two step work. (*Id.*) The ALJ's second hypothetical moved from medium to light work with the same

restrictions and limitations. The VE testified that based on the limitations in both hypotheticals, there would be sufficient jobs in the national economy for Ms. Shook. (Tr. at 38-39.)

Plaintiff first argues that the ALJ's hypothetical question improperly assumed that the Plaintiff can meet the lifting requirements of light work, since Dr. Aggarwal restricted the claimant to lifting 10 pounds frequently in his Clinical Assessment. (Doc. 7 at 14.) However, as noted above, the ALJ did not find the opinions in Dr. Aggarwal's Clinical Assessment to be consistent with his own treatment records and, therefore, gave little weight to his opinion. (Tr. at 17.) An ALJ is only required to include all of the Plaintiff's credible limitations in his hypothetical to the VE, and can eliminate those assessments that are not supported by objective evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004). Therefore, there was no error in the ALJ's decision not to include Dr. Aggarwal's restrictions in his hypothetical to the VE.

The Plaintiff also claims that the ALJ failed to pose a question to the VE concerning all the Plaintiff's ailments, since the ALJ did not incorporate the Plaintiff's mental ability in the question posed to the VE. (Doc. 7 at 15.) The Plaintiff alleges that the mental status report of Dr. Thomas "provides concrete examples to support his

finding that the claimant's ability to sustain attention appears poor." (*Id.*) Dr. Thomas did indicate that the Plaintiff has poor immediate memory, but has adequate recent memory, since she was able to recall events completed earlier on the day of the examination. (Tr. at 165.) Additionally, Dr. Thomas concluded the Plaintiff would not be able to perform repetitive and routine tasks. (*Id.*) The ALJ found that the results of Dr. Thomas's mental examination were inconsistent with the other medical evidence of record. (Tr. at 19.) The record does not indicate that the Plaintiff was ever prescribed anti-depressant medication. (*Id.*) Further, Plaintiff's treating physician, Dr. Aggarwal, makes no mention in his notes of Plaintiff ever complaining or exhibiting symptoms of depression. (*Id.*) Finally, Dr. Samuel Popkin's Psychiatric Review Technique showed only moderate psychiatric problems. (Tr. at 180.) The ALJ found that Dr. Popkin's assessment was more consistent with the medical evidence and Plaintiff's treatment record. (Tr. at 19.) For these reasons, the ALJ was not required to include Dr. Thomas's assessment in his hypothetical, because he did not find Dr. Thomas's opinion to be credible. (Tr. at 19.) Therefore, the ALJ did not fail to include appropriate limitations in his hypothetical to the VE.

IV. Conclusion.

Upon review of the administrative record, and considering all of Ms. Shook's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 18^th^ day of January 2012.

L. Scott Coogler
UNITED STATES DISTRICT JUDGE
167458